IN THE COURT OF APPEALS OF TENNESSEE
AT MEMPHIS
February 23, 2010 Session

**JOHN COOK, JR.**
**v.**
**PERMANENT GENERAL ASSURANCE CORP.**

**Appeal from the Circuit Court for Shelby County**
**No. CT-00676-08     Robert Childers, Judge**

**No. W2009-01352-COA-R3-CV - Filed April 21, 2010**

This appeal involves the alleged breach of an insurance policy. The plaintiff insured had an automobile insurance policy with the defendant insurance company. The insured paid his insurance premium by check. He subsequently was involved in an automobile accident and notified the insurance company of the accident. The check was later returned for insufficient funds. The insurance company notified the insured that if he did not bring the premium current by a date certain, his insurance policy would be cancelled. The insured gave the insurance company a valid check for the premium, which was negotiated. The insurance company later cancelled the policy, retroactive to a date prior to the insured's automobile accident. The insured sued the insurance company for breach of contract. After a bench trial, the trial court held in favor of the plaintiff insured. The insurance company appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Gary M. Kellar, Brentwood, Tennessee, for the appellant Permanent General Assurance Corp.

Kevin A. Snider, Germantown, Tennessee, for the appellee, John Cook, Jr.

# MEMORANDUM OPINION[1]

## FACTS AND PROCEEDINGS BELOW

In October 2005, Plaintiff/Appellee John Cook, Jr. ("Cook"), took out an automobile insurance policy with Defendant/Appellant Permanent General Assurance Corporation ("Permanent General").[2] Cook defaulted on the first insurance premium, due on October 19, 2005. Over the next nine months, Cook developed a checkered payment history regarding his Permanent General insurance premiums. At no time did he pay the required insurance premium on the date the premium was due. On at least one occasion, the premium was paid with a check that was later dishonored for insufficient funds.[3]

Each month in which Permanent General did not receive Cook's insurance premium by the due date, the company sent him a notice of intent to cancel the policy if payment were not received by a specified date. On several occasions, Cook missed the cancellation deadline, and Permanent General sent him a notice that the policy had been cancelled. Each notice of cancellation informed Cook that his policy would be reinstated if he paid all premiums in arrears and signed a statement verifying that no losses had occurred since the cancellation date. On each occasion, the premiums were brought current and Cook signed the required "no-loss" statement, so the policy was reinstated.

This pattern continued. Another premium was due on July 16, 2006, and Cook again defaulted. He was sent a notice of intent to cancel on July 19, 2006, to be effective on July 30, 2006. Pursuant to the notice, a check (No. 7894) for $224.06, for payment of Cook's premium arrearage, was tendered to Permanent General, prior to July 30, 2006, so the policy continued in force.

---

[1]Rule 10 of the Rules of the Court of Appeals states:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2]The insurance arrangement included a premium finance agreement with Permanent General Assurance Service Corporation, a wholly owned subsidiary of Appellee Permanent General Assurance Corporation. For purposes of this Opinion, "Permanent General" shall be inclusive of both entities.

[3]The check to pay the premium for October 2005 was returned for insufficient funds.

On August 14, 2006, Cook was involved in an automobile accident. He timely notified his insurance agent of the accident.

On August 18, 2006, Permanent General sent Cook a notice of intent to cancel, informing him that the balance on his premium account as of August 15, 2006, was $213.39. The notice told Cook to pay $213.39[4] or his insurance policy would be cancelled effective August 29, 2006.

On August 21, 2006, Permanent General learned that check No. 7894 proffered by Cook in payment of the July 2006 premium had been returned for insufficient funds. Permanent General asked the bank to process the check a second time, and it was returned NSF again.

On August 22, 2006, Permanent General sent Cook a notice informing him that check No. 7894 had been returned due to insufficient funds. The notice said that Cook had until September 4, 2006 to pay a total of $467.59, plus completing a "no-loss" statement, in order to reinstate the policy.

On August 24, 2006, Permanent General sent Cook a notice informing him that his policy was cancelled effective August 7, 2006. The notice informed Cook that there was an unpaid balance on his account in the amount of $112.57.

On the same date, August 24, 2006, Cook gave a check to Permanent General's agent in the amount of $213.39, the amount noted on the August 18 notice of intent to cancel. The check was negotiated by Permanent General.

On September 25, 2006, Permanent General sent Cook a refund check in the amount of $100.82.[5] Permanent General maintained that Cook's insurance policy remained cancelled effective August 7, 2006, seven days prior to Cook's August 14 automobile accident and, consequently, the accident was not a covered loss.

On January 25, 2006, Cook filed a lawsuit against Permanent General in the General Sessions Court for Shelby County, Tennessee. The General Sessions judgment was apparently appealed *de novo* to the Circuit Court of Shelby County. *See* T.C.A. § 27-5-108 (2000 & Supp. 2009).

---

[4]The notice of intent to cancel indicated that if payment were received after August 25, 2006, the amount due would be $224.06.

[5]Cook did not cash the refund check.

The circuit court conducted a bench trial on May 14, 2009. Although the testimony began in the morning on that day, the transcript in the appellate record has only the testimony from the afternoon.[6] That afternoon, the trial court heard testimony from an adjuster for Permanent General, Judy Mitchell, and from Permanent General's Vice President of Underwriting and Premium Finance, Allison Garrison. The witnesses testified about the events outlined above. Garrison explained that the cancellation of Cook's insurance policy was made retroactive to August 7, 2006, because allegedly that was the date that Permanent General received from Cook check No. 7894, which was ultimately dishonored. Garrison maintained that Cook's insurance coverage was cancelled appropriately, in accordance with the insurance policy and pertinent financing agreements.

At the conclusion of the testimony, the trial judge asked counsel for Permanent General several questions to clarify the testimony. The trial judge inquired why Cook's policy was cancelled retroactive to August 7, 2006, when this was not consistent with Permanent General's past practice; he responded that he could not answer that question. Permanent General also acknowledged that there were no policy provisions requiring Cook to sign a no-loss statement prior to reinstatement of the policy.

The trial court then issued an oral ruling from the bench. The trial court first recounted the pertinent payments, notices, and transactions. The trial court noted that Exhibit 17 showed that check No.7894 was received by Permanent General prior to the cancellation date, July 30, 2006, and was returned for insufficient funds on August 21, 2006. The trial court found that Cook's mother gave Permanent General a valid check for the full amount due, as per Permanent General's August 18, 2006 notice of intent to cancel, on August 24, 2006.[7] Based on these factual findings, the trial court concluded that Permanent General breached the contract of insurance by failing to provide coverage for Cook's August 14, 2006 automobile accident. Cook was awarded a judgment for the amount of damage to his vehicle, $14,200.

A written order was entered by the trial court on May 22, 2009. Permanent General now appeals.

## ISSUE ON APPEAL AND STANDARD OF REVIEW

On appeal, Permanent General contends that the trial court erred in finding that it breached its contract of insurance with Cook. We review the trial court's findings of fact *de novo* on

---

[6]At oral argument, the parties' attorneys indicated that the court reporter did not appear in the morning.

[7]The trial judge inadvertently said August 24, 2009, but in context obviously intended to say August 24, 2006.

the record, presuming those findings to be correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). Conclusions of law are reviewed *de novo*, with no such presumption of correctness. ***See State v. Levandowski***, 955 S.W.2d 603, 604 (Tenn. 1997).

## ANALYSIS

Permanent General argues on appeal that its cancellation of Cook's insurance policy was done pursuant to Tennessee's Premium Finance Statute, Tennessee Code Annotated § 56-37-110(b). Permanent General asserts that the statute provides that if an insured gives the finance company a premium payment in the form of a check that is later dishonored, the company may treat that as a request by the insured to cancel the policy. Permanent General also contends that the cancellation was done in accordance with the premium finance agreement between Cook and Permanent General, and also in accordance with Cook's insurance policy. Citing ***Tallent v. Tennessee Farmers Mutual Insurance Company***, 785 S.W.2d 399 (Tenn. 1990), Permanent General argues that Cook's tender of check No.7894, referred to in ***Tallent*** as a "worthless check," did not constitute an effective premium payment that would continue insurance coverage.

In response, Cook notes that the appellate record does not contain a complete transcript of the trial; rather, the transcript is of only half of the testimony heard by the trial court. Moreover, there is no statement of the evidence regarding the proceedings for which there is no transcript. Without a complete record, Cook argues, the appellate court must presume that the evidence supports the findings of the trial court.

In the event that the appellate court reaches Permanent General's substantive argument, Cook notes that the trial court's oral ruling indicated that the retroactive effective date of the cancellation was inconsistent with Permanent General's past course of dealing with Cook. Cook notes that the retroactive cancellation date, August 7, 2006, happened to be a date prior to his August 14, 2006 automobile accident, and that this cancellation date was selected by Permanent General *after* it received notice from Cook of the accident. This implies that the cancellation date was selected to avoid coverage of Cook's damage in the accident. He argues that Permanent General's actions were not in strict compliance with the termination provisions in Cook's insurance policy.

In this case, the trial court's decision was premised on its factual findings regarding the parties' past course of dealing and the sequence of events leading up to the cancellation of Cook's policy. These factual findings were based not only on the exhibits entered into evidence, but also on the testimony of the witnesses, including any evaluation of the credibility of the witnesses.

"The appellant bears the burden of showing that the evidence presented below preponderates against the trial court's judgment." *Mfrs. Consol. Serv., Inc. v. Rodell*, 42 S.W.3d 846, 865 (Tenn. Ct. App. 2000). "The burden is likewise on the appellant to provide the Court with a transcript of the evidence or a statement of the evidence from which this Court can determine if the evidence . . . preponderate[s] for or against the findings of the trial court." *Willcutts v. Willcutts*, No. W2002-02636-COA-R3-CV, 2004 WL 404497, at *9 (Tenn. Ct. App. Mar. 4, 2004) (citing *Coakley v. Daniels*, 840 S.W.2d 367, 370 (Tenn. Ct. App. 1992)); *see also Mfrs. Consol.*, 42 S.W.3d at 865. "In the absence of a transcript or a statement of the evidence, a presumption arises that the parties presented sufficient evidence to support the trial court's judgment." *Mfrs. Consol.*, 42 S.W.3d at 865. This presumption has been termed "conclusive." *Coakley*, 840 S.W.2d at 370; *see also Scarbrough v. Scarbrough*, 752 S.W.2d 94, 97 (Tenn. Ct. App. 1988) ("When the trial court hears the evidence, but the evidence is not included in the record on appeal, it is presumed that the evidence supports the ruling of the trial court."). This rule also applies when there is a transcript or a statement of the evidence that is incomplete. *See Mfrs. Consol.*, 42 S.W.3d at 865; *Coakley*, 840 S.W.2d at 370.

In the instant case, Permanent General failed to provide this Court with a complete transcript or a complete statement of the evidence heard by the trial court. Thus, we must presume that the evidence presented below supported the ruling of the trial court. *Scarbrough*, 752 S.W.2d at 97. Under these circumstances, we must conclude that Permanent General has failed to meet its burden of showing that the evidence preponderates against the trial court's judgment.

## CONCLUSION

The decision of the trial court is affirmed. Costs of this appeal are to be taxed against Appellant Permanent General Assurance Corporation, and its surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE